The next case today, number 221538, Julio Benigno Blanco Contreras, et al., v. Pamela Bondi. Will counsel for petitioners please come up and introduce yourself on the record to begin? Good morning, Your Honors. Randy Olin for the petitioners. May I reserve two minutes for rebuttal, please? Okay, you may. I'd like to first address the government's suggestion that a heightened standard of review should apply to these cancellation cases. In my practice, I've had at least a dozen cancellation cases since the Wilkinson decision in which they have argued this in every case. So I presume that nationwide they've made this argument probably hundreds of times. And the government has failed to persuade even one court that there should be an increase in the standard of review. And that's for good reason. What is your interpretation of the word deferential when the Supreme Court uses it in Wilkinson? Well, I don't think Wilkinson defines exactly what the standard is. Right, that's why I'm asking you what you think it is. Yes, yes. And certainly, in fact, the government filed a 28-J letter in which it claimed that the petitioners here think that there should be no difference. Well, that's not the case. I've read Wilkinson, and we know that Wilkinson says there has to be some degree of deference. The proper degree of deference is, first of all, let me just say that Loper Bright eliminated Chevron deference, 40% Chevron deference. So I think the import of Loper Bright is that there should be less deference, not more deference. The proper deference in cases like this, Loper Bright, and by the way, the government has not even cited Loper Bright in their brief, doesn't mention it in their brief. Loper Bright itself has cited to Skidmore and Skidmore deference. That is the perfectly appropriate level of deference that should be given in this context, and the reason is, if you look at what Skidmore says, it says that the board would be entitled to deference, I want to get this right, if the reviewing court is convinced of the thoroughness of its consideration, the validity of its reasoning, the consistency with earlier and later precedents. And the Skidmore deference requires that courts ensure that the agency has conducted reasoned decision-making. Now, the Ninth Circuit has recently embraced Skidmore deference in a case in which they perfectly explain why Skidmore deference is so appropriate in this context, and they said that under Skidmore, the deference given to an agency action may range from great deference, great respect to near indifference, depending upon the degree of the agency's care in making its decision, its consistency, its formality. That is the appropriate level of deference to be given cases in this context. Mr. Counsel, I mean, the law seems to be clear in this area that the administrative agency, in deciding if the hardship standard has been met, has to take a cumulative approach. The law identifies all of these factors that have to be considered, age, health of the qualifying relatives, their personal circumstances, and so forth. And then at the end, it's supposed to take this cumulative view of how that all adds up. Does it meet the hardship standard? In the aggregate. In the aggregate. Thank you. So how are we supposed to review that really ultimate determination? Are we entitled to say, we think they got it wrong? They added it all up incorrectly. And we think, looking at it cumulatively in the aggregate, we think the standard was met. I mean, that seems to be what you're asking us to do. Are we entitled to do that? I believe you are, Your Honor. What we're not entitled to do, technically and theoretically, is to review agency findings and fact. But that's a particularly gray area, I would say, with respect to the factors that are involved, and that must be considered in the aggregate. This case has a very good example. When you say findings and facts, doesn't that also go to weighing the facts and making a determination? Because it's factual bounds. No, I think this Court has the ability to. Let me give you an example, Your Honor. In this case, one of the major factors in this case. We have jurisdiction to review the application, and we're struggling with trying to figure out how we're supposed to evaluate that. Well, I think you have the ability to. The agency may make these factual findings. And, as I say, this is a gray area as to their factual findings. In this case, they made a factual finding that this child, this teenager, who has myriad medical issues as well as, in addition to major depression, the agency's finding is that he's relatively healthy. Okay, so let me ask you about that. They look at the evidence and they say, we don't think it's all that serious. Are we permitted to disagree with that and say, no, no, we think it actually is serious and that characterization is not right? Are we, I mean, as Judge Helping points out, I mean, it's not just the historical stuff. What kind of medical conditions did he experience? What does it all add up to? And what it all adds up to, that strikes to me, that sounds to me like it smacks at fact-finding too. Can we disagree with that characterization? In Figueroa, this court said that we save for another day whether the reviewing court may consider historical facts that the agency does not cite to. And I think that it's indispensable to proper adjudication of these cases that we be able to do so. Let me bring some facts. Again, you're bringing positive facts, but there's also some negative facts. If you look at the ILJ's decision that, for example, your client had a false social security number. He filed taxes under that false number. How are we supposed to, because if we're reviewing, you're giving weight to these facts taken as granted, but some of us could say, oh, based on the tax, they're out of here. Another one of us or another panel could say, well, but based on the children's conditions, they outweigh the tax. Who are we? Do we have that authority to make that balancing? Because the issue in this case is not whether he paid his taxes on time. The issue in the case is the exceptional and extremely unusual hardship standard, and those types of facts, if you want to call them facts, are irrelevant to that standard. What we're looking for is a balance. What we're looking at here is whether or not the factors that have come down in case law for decades, if they support a finding exceptional, extremely unusual hardship. This is the hardship standard. But what about what Judge Lopez just asked about the finding that his condition wasn't that serious? I mean, it seems to me that that's a factual finding that we're stuck with, and it's unreviewable. First of all, it's dead wrong. Okay, assuming it is. This is Justice Gorsuch's. What is the mechanism by which we can review that factual finding when the Supreme Court says we can't? This is Justice Gorsuch's nightmare, and every one of these cancellations cases that's coming down the pike is raising this particular issue. I don't know how to get around it. It's the nightmare that I don't know how to resolve. Well, here is the factual finding. As wrong as it is, he doesn't have a serious medical condition. Okay, so we can't review that? So we are stuck with, as it were, he doesn't have a serious medical condition. But this Court can look to the other factors, the other facts of this case. This boy has myriad significant medical issues, and I believe that you can say, okay, the agency said it's not a serious medical condition. But we can look to these other facts and say, but this still supports the hardship. His conditions still support the hardship standards. In other words, a relatively healthy person can still have issues that would support the finding of extreme, exceptional, unusual hardship. I got that backwards, exceptional, exceptional, unusual hardship. And it also goes to this issue of Figueroa, I think, that we discussed in Figueroa. If the Court is able to look at facts that the agency has not adverted to, then we can, to some degree, ameliorate Justice Gorsuch's concerns. As I say, these factual finds, there's a gray area in every one of them. They're not black and white, and I think the Court has the ability, they can review these facts, and as I say, say, okay, he's relatively healthy. Of course, one can ask, relative to what, a quadriplegic? But the agency can say, well, we don't think he has a serious condition. But the Court is able to say, okay, the agency doesn't think it's serious. But there are other facts here that support the finding of exceptional and extremely unusual hardship. Wouldn't it have to be a clearly erroneous factual determination? I'm sorry? Wouldn't it have to be like a clearly erroneous factual determination for us to send the case back? Well, I think there's an argument to be made, and I'm sure my sister will make it, that we are not able to review that particular decision. But we can review the case and the other factors without overturning that decision, but bring more to bear on it, more analysis to bear on it. But to do what you're saying, that we can review the case, in fact, and I'm saying you're trying to do it, but it's literally a subterfuge for reviewing the facts. Because what we are doing is we are applying the facts to the legal standard. I mean, that is the important step, not just the finding of facts, but applying those facts to the legal standard. And that's where we can make those determinations. Are you saying we should pick out facts that maybe seem more important to us and remand it to the agency to provide an explanation as to why these additional facts were not considered? I mean, what remedy are you looking for? I could be off base on this, Judge, but I think that this is what the Court was referring to in Figueroa, that we can look to other facts that even the agency has not cited and bring them to bear on the ultimate determination of applying the facts to the legal standard. Let me say this as an analogy, and it doesn't necessarily apply to your case, but this is administrative review, and if we can do this in administrative review, would we have to do it also in criminal review of sentencing? Because we don't necessarily, unless it's a rear, blatant error, we don't re-weigh the facts and say this fact should have been considered or this other fact we want to send it back. So, again, that's troubling me. I understand. Okay, let's hear counsel from the government. Thank you. Thank you for voting. Counsel, please introduce yourself on the record to begin. May it please the Court. Rebecca Hoffberg Phillips on behalf of the United States Attorney General. I'd like to start with the standard of review and clarify some things regarding the word deference that I think my opposing counsel has conflated. There's two issues. One is the standard of review that the Court is going to apply to a Board decision finding no hardship. The other is the Board's definition itself, and I want to go through the standard of review first because before I can ask you to uphold the Board's decision here, we're asking for substantial evidence review, and I think that we need to explain why we win under that by first explaining why substantial evidence review applies. Now, it's tricky here to determine the standard of review because as this Court acknowledged, the Wilkinson Court said the review is deferential. What the Wilkinson Court failed to do, unfortunately, is to tell us what deferential standard of review, and that's why the government articulated two possible deferential standards of review for this Court to consider. One is abuse of discretion, and one is substantial evidence, and there are arguments really in favor of both, but the government's position is that substantial evidence is the better standard, and I'll explain that it's basically true for two main reasons. One is because this is a primarily factual question, and historically factual questions have been reviewed for substantial evidence. The second has to do with the language in the statute not saying in the opinion of the Attorney General, which was true of the predecessor statute for suspension of deportation, and that's why the extreme hardship standard previously reviewed for abuse of discretion. It said in the opinion of the Attorney General, and what we know, and as I've cited in the brief, is that what the Supreme Court has said is we look to the language in the statutes, and it's hard because it's a weird situation because the Supreme Court said, well, this is not a discretionary determination. Remember, that's why we were arguing you couldn't review it before, and so the Supreme Court says it's not discretionary, and it's mostly factual, but now we have a legal standard, but the history is abuse of discretion on this issue, and so where do we come out? Let's just forget about abuse of discretion. I don't think that works at all. Thank you, Your Honor. The substantial evidence standard, the clearly erroneous standard that Judge Helpe referred to earlier, are they one and the same? So the substantial evidence standard, and this Court was sort of getting at it, can the Court reach a different conclusion? You can reach a different conclusion, but that's not the standard. It's does the record compel a different conclusion? So reasonable fact finders could find differently, but under substantial evidence, the record has to compel a contrary conclusion. And as far as whether there's – So the standard is if, let's say, three of us feel it should have gone this way, but we realize it could have gone that way, we have to give that deference. If we see something there that the IJ missed and it's so blatant, then that's where we can come in as a matter of law and say we're remanding because you've got to take that into consideration, but we're not opining on what that ultimate decision will be. Just do the analysis the right way. That's what we're here for, correct? That's right, Your Honor. Let's talk about Judge Helpe's example. I mean, why isn't this a case – this is on the medical condition of one of the qualifying relatives. I think it's Alan. Isn't there an argument that in characterizing his condition, it's not really normal that the IJ failed to account, failed to take into consideration evidence in the record. There's a lot of evidence in the record about his physical condition and his mental condition, and it's very difficult to tell from the decision that the IJ and the BIA confronted that there's just this sort of summary statement. Wouldn't that be a good example of exactly what Judge Helpe is talking about? We can't decide for ourselves whether that qualifies as serious, but the IJ has got to take a hard look at that and explain why that doesn't make it. Why can't we do that? I think you're saying we can. Is that right? What I'd like to respond to that is that the IJ did consider all evidence, even if not expressly mentioned, which was stated in the IJ's decision, and more importantly, the board on review expressly cited all of the medical evidence in its decision. When the medical evidence was the 2016 medical report and was the psychological evaluation of 2017. And what the board and the IJ found was not that it overlooked evidence, and I'd like to point out that when you overlook evidence entirely, I would say that most courts have found that to be a legal challenge, and that would be reviewable as a legal or constitutional claim, as it's always been. And so there's a difference between weighing evidence differently and finding what's disputed and undisputed in the facts, and then completely overlooking a piece of vital information. And, Your Honor, we would agree that if evidence was completely overlooked, that would probably amount to a legal error that would warrant the remand. That's not what happened here. What happened here is you had a little bit of mixed evidence with respect to the seriousness of the offense, and to the, I'm sorry, not the offense, the mental condition. And so what you have is the agency ultimately weighing evidence and coming out on the side of this is not serious enough. And that's because, in addition to the psychological report and the medical report, you have a statement from the petitioner's son himself that actually postdates both of those things, in which he neither mentions the mental conditions, the obesity, the cholesterol, nothing. He mentions an eye issue in his statement. I'm talking about the qualifying relative. And so it's easy to see how the record wasn't, to the extent that the facts are disputed on the seriousness, that's exactly why it's a factual question not subject to review, as we pointed out. Yes, I have been reading the IJ's decision, and I'm somewhat, I don't know if you want to say troubled, but a little confused because he weighs all the medical evidence. He weighs all the positives. And then he says, these are the negatives, and that's where I mentioned earlier this false social security number, filing taxes under that number. But then he's got a statement, which I just can't make sense of it, and it says, well, these are negative equities. The court finds that the positive equities for these two individuals that are essentially raising two children in this country and have been working and making every effort to pay taxes and have been here for quite some time outweigh any negative equities. So he's saying, you know, all the positive equities weigh in their favor. But then he says, and I think it's a typo here, for all the above reasons the court will find the respondents have failed to meet their burden to show exceptional, extremely unusual hardship. I guess it should be petitioners. He's saying that the hardships outweigh the negatives, but then he's saying they're not right. So can you make sense of that? Yes. And what the IJ was doing was finding – That's a page, specifically page five, or page eight of the addendum, page five of the decision. Yes. What the IJ was doing there was making that ultimate exercise of discretion, so that basically saying – so that's independent from the hardship determination, and that does remain unreviewable post-Wilkinson, just as a – Even if it doesn't make sense, because he's kind of saying the equities weigh in their favor, but I'm denying it because they're not entitled to it. This is not the model of clarity. It's an oral decision, and oftentimes the IJs are speaking off the cuff, and there's a little bit – Or maybe the transcript, the way it came out, it's – Right. I agree that it's – he follows a conclusion that didn't come from the preceding sentence, but that was meant to weigh the equities overall in the ultimate exercise of discretion. Wouldn't it be – this grounds at least a remand to clarify exactly what he said there, because it's – again, it just doesn't make sense. And I've never – I've read or probably read – somebody on the circuit, you know, probably close to 100 of these opinions, and this time it just – at the end it doesn't make sense. Yeah. So if you look on page 4 of the IJ's decision, it says with respect to discretion, and then it goes on to talk about the favorable exercise of discretion. So when it mentions discretion there without the use of the word hardship, and previously we argued hardship was a discretionary determination, when it's just saying – he specifically says with respect to discretion and then makes a positive finding in the ultimate exercise of discretion. There's no need to remand because that issue is not before the court at all in this case, and the hardship determination was completely satisfied by, you know, the IJ and board decisions in this case are sufficient to show that the agency weighed the evidence, considered all of the relevant evidence. Counsel, let me ask you something. Yes. This is on the application of the substantial evidence standard that you're advocating. So if we accept that, okay, the IJ and the BIA, they acknowledged the medical report about the physical conditions of the qualifying relative, they were aware of the psychologist's report as well, but when we look at those reports and what they say, we don't think that substantial evidence supports the determination of the agency that these were not serious medical conditions. Are we entitled to do that? Your Honor, you're not entitled to determine the severity of the illness because that is a factual question. Now, as I mentioned, if you thought that evidence was completely ignored, which has not been ignored. Well, you just said we can't decide that because they profess to be aware of it. Right. They profess to be aware of it, and so that would be a disagreement on a factual question that Wilkinson said the seriousness of an illness is considered a factual question, and that's also a matter of JJG, which this court, I just want to quickly say, I mentioned before about the board's definition. Are you saying that only if the evidence compels a different result can we change it? Yes, but it has to be undisputed facts, and it has to be, you're applying a legal standard to undisputed facts, and I understand there's some tension there because, and I agree, there's tension there, but the idea is that that's what makes this reviewable now, and under Patel and the Supreme Court precedent, the court is not supposed to review the factual questions, which matter of JJG made very clear, and this court upheld in Takuri Takuri, that it is a factual question, and so that is something that the court cannot review as a factual matter, but can decide whether the undisputed facts meet the exceptional unusual, extremely unusual hardship standard, which I just want to quickly mention. I see my time is up, but that the court, what I was getting before about deference, is the court need not defer now to the board's decision post-Loper Bright, and we never mentioned Loper Bright because this court already had precedent upholding all four of the board's published decisions relating to the hardship standard. That's Monreal, Racines, Andalosa, and JJG, so this court under Loper Bright has prior precedent already upholding the board's definition according to those cases, and so we're not asking for deference to a board decision here, we're just asking the court to uphold its prior precedent of acknowledging those definitions. I see that my time is out, unless the court has any further questions? Any further questions? A lot, but I guess we have to move on. We've got three more coming. In conclusion, the government asks that the court find that no record evidence compels reversal of the agency's no hardship determination in this case. Thank you. Thank you, counsel. Mr. Olin, you have two minutes. Thank you, Your Honor. I'm very pleased that my sister has acknowledged that the overlooking of evidence, complete overlooking of evidence, is in fact a legal question that this court can review. The two major factors and the most important factors in this case are, of course, the child's health, and the second one is, which has been a factor since cancellation of removal immemorial, is the economic and social considerations of the country that they're returning to. Now, the petitioners submitted some 45 pages of country conditions reports, which discussed the deplorable conditions in Guatemala, especially for children. They had documentation in there that applied to children going back to Guatemala, which the agency did not speak to at all. But more importantly, the personal history of this family in Guatemala. One of the female petitioners' sisters was raped. Another one was kidnapped, never heard from again, and presumed to be dead. Another one had to flee the country because she refused to pay an extortion demand. Another one had to come to the United States because she, too, was subject to an extortion demand. A nephew was shot because he wouldn't play ball with the extortionist gangs. These factors are paramount to the consideration of the main factor of what are these children going back to Guatemala, what are they going to face, completely ignored by the agency. In fact, at the board level, the petitioners challenged the fact that the agency did not consider that at all, and the agency's response was, I kid you not, the fact that the children read, write, and speak Spanish means that they will, I'm paraphrasing now, will not have a problem upon their return to Guatemala. I'm not kidding. That's what they said. That's how they responded to that. This issue alone, I believe, requires a remand. As my sister says, it's a legal question. They completely overlooked it. We should remand on that basis alone. I'm sorry, Judge Lopez, did you? I do have a lot of questions, but again, I'll pass for now. We'll have to sort it all out. Thank you. Thank you.